No. 87-406

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

IN RE THE MARRIAGE OF
J.A.M.,

Petitioner and Appellant,

and

D.A.M.,

Respondent and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Tipp, Skjelset, Frizzell & Buley; Thomas W. Frizzell,
Missoula, Montana

For Respondent:

Thomas W. Trigg, Missoula, Montana

Submitted on Briefs: Jan. 28, 1988

Decided: March 8, 1988

Filed: MAR 8 - 1988

Ethel M. Harrison

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Petitioner, J.A.M., appeals an order of the Fourth Judicial District, Missoula County, awarding respondent the right of reasonable visitation.

We affirm.

J.A.M. and D.A.M. were married on December 15, 1980. A daughter, A.I.M., was born of the marriage. In 1983 the parties separated. On August 22, 1984, J.A.M. filed a petition for dissolution. Trial was held on January 19, 29 and 30, 1987, and on April 28, 1987. In its June 4, 1987, decree of dissolution, the District Court divided the marital property, awarded custody of the daughter to J.A.M. and ordered D.A.M. to pay $50 per month in child support. The court also awarded D.A.M. reasonable visitation rights pursuant to a court-ordered visitation schedule.

J.A.M. presents one issue for our review:

Did the District Court abuse its discretion when it granted respondent D.A.M. the right of reasonable visitation?

At trial J.A.M. alleged the following: (1) A.I.M. has had no contact with her father for nearly three years; (2) A.I.M. is at risk of contracting genital herpes from her father; and (3) A.I.M. is in danger of being sexually abused by her father. The District Court found that J.A.M.'s allegations were unsupported by substantial credible evidence and ordered a structured visitation schedule. On appeal, J.A.M. restates the above-mentioned allegations and contends the District Court abused its discretion when it awarded reasonable visitation to D.A.M.

The standard by which we review this issue is found in § 40-4-217(1), MCA, which provides that the noncustodial parent is entitled to reasonable visitation unless the visitation would endanger the child's physical, mental, and moral

2

or emotional health. In Re Marriage of Jacobson (Mont. 1987), 743 P.2d 1025, 1028, 44 St.Rep. 1678, 1681. We will not disturb an award of visitation when the District Court's findings are supported by substantial credible evidence. In Re the Support of Rockman (Mont. 1985), 705 P.2d 590, 593, 42 St.Rep. 1323, 1325; In Re the Marriage of Concepcion (Mont. 1984), 687 P.2d 718, 720, 41 St.Rep. 1675, 1677.

J.A.M.'s first allegation, that A.I.M. has had no contact with D.A.M. in nearly three years, is not supported by substantial credible evidence. In October 1984, J.A.M. and A.I.M., without D.A.M.'s knowledge, moved from Missoula to Pueblo, Colorado. Upon arrival, J.A.M. contacted D.A.M. by telephone but refused to reveal her address. Additionally, J.A.M. refused to allow A.I.M. to speak with D.A.M. On March 11, 1985, the District Court ordered "that [D.A.M.] shall have contact with [A.I.M.] by telephone at reasonable times and shall exercise that contact in a reasonable manner." Subsequent to the above-mentioned District Court order, D.A.M. contacted A.I.M. by telephone on a weekly basis. D.A.M. also visited A.I.M. on two occasions when A.I.M. was in Missoula. A review of the record supports the District Court's finding that, despite J.A.M.'s efforts to the contrary, D.A.M. was in contact with his daughter during the past three years.

J.A.M.'s second allegation, that A.I.M. is in danger of contracting genital herpes, is also not supported by substantial credible evidence. D.A.M. testified that prior to his marriage to J.A.M., he contracted Herpes Simplex II. D.A.M. testified that he has not infected anyone, including J.A.M., with the contagious disease. He also testified that his outbreaks are foreseeable, occurring every seven months and lasting approximately nine days. D.A.M. stated that the herpes lesions are small, approximately one and one-half

3

inches in diameter, and that he protects others from infection by applying an ointment, cyclovir, and covering the lesions with bandages. J.A.M. did not rebut D.A.M.'s testimony. Clearly, the District Court did not abuse its discretion when it found that J.A.M.'s allegation was not supported by substantial credible evidence.

J.A.M. next contends that D.A.M. molested A.I.M. and that A.I.M. is in danger of continued molestation. In April 1984, approximately one month prior to separation, J.A.M. allegedly smelled semen on A.I.M.'s underwear which were soaking in the bathroom sink. J.A.M. immediately accused D.A.M. of molesting A.I.M. D.A.M. vehemently denied J.A.M.'s claim. J.A.M. did not report the incident to her friends, family, doctor or to the appropriate authorities. J.A.M. and A.I.M. continued to live with D.A.M. for approximately thirty days following the incident. In May 1984, J.A.M. and A.I.M. moved to another residence in Missoula. J.A.M. continued her employment as a registered nurse at St. Patrick's Hospital. Following their separation, D.A.M. continued, with J.A.M.'s consent, to provide A.I.M. with twenty-four hour care for three days weekly.

J.A.M. contends that in July 1984 she found herpes lesions on A.I.M.'s back. J.A.M. did not report this incident to anyone. J.A.M., a registered nurse, did not take A.I.M. to see a doctor. A.I.M. has never been diagnosed as having herpes.

In August 1984, A.I.M. was interviewed by a clinical psychologist, Dr. Joan Hess-Homeier, for an evaluation of the child abuse allegations. Following her initial interview, Dr. Hess-Homeier filed a child sexual abuse report with law enforcement authorities. Dr. Hess-Homeier later obtained payment for her services under the Crime Victim's Compensa-

4

tion Act. No charges in the above-mentioned matter were ever brought against D.A.M.

Dr. Hess-Homeier conducted twelve additional interviews with A.I.M. Two of Dr. Hess-Homeier's interviews with A.I.M. were videotaped. At trial, Dr. Hess-Homeier testified that she felt A.I.M. had been molested. Additionally, Dr. Hess-Homeier's videotaped interviews were introduced into evidence. After reviewing the videotapes, the District Court concluded: (1) Dr. Hess-Homeier defined and explained important sexual terms for A.I.M.; (2) Dr. Hess-Homeier used anatomically correct dolls to demonstrate sexual acts to A.I.M.; and (3) Dr. Hess-Homeier, on material matters, asked A.I.M. leading questions and "cross-examined" her. The District Court noted further that Dr. Hess-Homeier repeatedly referred to handwritten notes, some dated as recent as 1986, purporting to record the substance of her 1984 evaluation of A.I.M.

At trial D.A.M. repeatedly denied that he had molested A.I.M. The District Court found that D.A.M. was a credible witness. The District Court also found that D.A.M. attended to A.I.M.'s physical needs, provided her with part-time day care, and appropriate education and social opportunities. The record supports the District Court's finding that D.A.M. is "an excellent parent to A.I.M."

Previously, we held that in nonjury trials, the credibility of witnesses and the weight accorded their testimony is a matter properly left to the discretion of the District Court. Estate of Murnion (Mont. 1984), 686 P.2d 893, 896, 41 St. Rep. 1627, 1630. On appeal we review the evidence in the light most favorable to the prevailing party. Wallace v. Wallace (1983), 203 Mont. 255, 661 P.2d 455, 457.

Substantial credible evidence supports the District Court's decree awarding respondent the right of reasonable

visitation.  Accordingly, we hold there was no abuse of discretion.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices